**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:

STEVEN EDWARD FLING,                               CASE NO.: 10-40454-LMK
                                                   CHAPTER: 7
        Debtor.
_____/

**ORDER OVERRULING CAPITAL CITY BANK'S**
**OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION**

THIS MATTER is before the Court on the Creditor Capital City Bank's ("CCB") Objection to Debtor's Claim of Exemption (the "Objection," Doc. 113) which was filed on January 11, 2011. A pre-trial hearing was held on the Objection on February 11, 2011 where this Court determined that an evidentiary hearing was necessary and was eventually set for April 19, 2011.

At the April 19 hearing, counsel for CCB and counsel for Debtor agreed that the dispute was purely a question of law and that there were no undisputed facts.[1] In his schedules, the Debtor claimed a homestead exemption in a bank account at Wakulla Bank which contained proceeds from the sale of a his home pursuant to the homestead exemption provided for by Section 4, Article X of the Florida Constitution and as expounded upon in *Orange Brevard Plumbing & Heating Co. v. LaCroix*, 137 So.2d 201, 206 (Fla. 1962) (holding "the proceeds of a voluntary sale of a homestead to be exempt" so long as the debtor has a good-faith intent to "reinvest the proceeds thereof in another homestead within a reasonable time"). CCB objects to the Debtor's claim of exemption on the ground that the proceeds from the sale of Debtor's home were not homestead proceeds, but were, instead, non-exempt proceeds from the sale of a non-homestead property. In

---

[1] The Court understood this representation to mean that counsel for both sides would file stipulation of facts with the Court. No such document was filed. Instead, both sides filed exhibits with their respective memoranda of law for the Court to consider. Presumably, there is no dispute as to the veracity of the claims made in the Debtor's deposition or in any of the documents filed with the Court.

1

the alternative, CCB contends that even if the bank account is found to be proceeds from the sale of his homestead, that the Debtor failed to reinvest those proceeds within a reasonable amount of time and thus, can no longer claim an exemption in those proceeds.  The Debtor argues that he reestablished his homestead status in the subject real property prior to the sale of that property, and that, after the sale, he actively sought to reinvest the proceeds in a new homestead to no avail.  Thus, the issue is whether the proceeds from the sale of Debtor's real property can be classified as homestead proceeds, and if so, whether the Debtor can still claim an exemption in those proceeds as of the date of his filing.  This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §157(b)(2)(B) and 28 U.S.C. § 1334.

## Facts

The facts in this case are undisputed.  The Debtor filed his voluntary Chapter 7 petition on May 7, 2010.  On his Schedule C, the Debtor listed a bank account at Wakulla Bank as exempt under Section 4, Article X of the Florida Constitution, as well as Fla. Stat. Ann. §§222.01, 222.02, and 222.05, with the notation "proceeds from the sale of Debtor's homestead residence located at 3 Irvin Langston Road, Crawfordville, Florida ("Langston Property")."  (Doc. 1, Sched. C).  Debtor's Schedule C also stated that the proceeds of the sale were placed into the account on May 8, 2009.

The Debtor testified at his 2004 Examination that he sold the disputed Langston Property on or about April 6, 2009.  Prior to selling the house in April 2009, the Debtor testified that he had been residing in the Langston Property "full time" for about "a year, year and a half" and he paid off the mortgage owing on the Langston Property in February 2007.  Prior to residing full time in the Langston Property, the Debtor had rented out the Langston Property.  After the sale of the Langston Property, Debtor testified that he placed the proceeds of the sale ($191,211.86) into a

bank account at Wakulla Bank (the "Homestead Bank Account") and labeled the account "homestead account." The Debtor also testified that he currently rents a home.

After selling his home in April 2009, the Debtor hired a realtor, Harbor Point Realty, and began looking for homes. The Debtor testified that he looked seriously at 6-12 homes over the next 13 months before his Chapter 7 filing. He made offers on 3 of those homes, none of which resulted in a completed purchase. His first offer was in July 2009 (two months after the proceeds were placed into the Wakulla Bank account) where the Debtor offered $295,000 for a home. The second offer came in July 2009 for a home at the price of $140,000 which was apparently accepted but never closed due to structural issues with the house. The final offer came in early March 2010, two months prior to the Debtor's filing, for a house that was on the market for $250,000 and debtor offered $200,000. Around the same time, CCB obtained a Writ of Garnishment against the Homestead Bank Account which effectively "froze" the account. After the Homestead Bank Account was frozen, the Debtor testified that he ceased looking at houses.

### Discussion

When dealing with a Debtor's exemptions, Fed. R. Bankr. P. 4003(c) places the burden of proof on the objecting party who must prove "that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). The objecting party must prove that the exemption is not proper by a preponderance of the evidence. *In re Hill*, 163 B.R. 598, 603 (Bankr. N.D. Fla 1994). Therefore, in this case, CCB must show, by a preponderance of the evidence, that the Debtor's claim of homestead exemption on the sale proceeds was improper. CCB has failed to meet its burden of proof.

Section 4, Article X of the Florida Constitution provides for the homestead exemption which protects a debtor's homestead from the claims of most creditors. In order to establish a homestead, a Florida resident must acquire title to the "land in question and with his family [make]

3

his home thereon…and no action of the Legislature or declaration or other act on his part [is] required to make it his homestead." *Hutchinson Shoe Co. v. Turner*, 130 So. 623, 624 (Fla. 1930). Furthermore, it is well established law, in Florida, that the proceeds of the sale of a homestead are exempt from the claims of creditors only if the Debtor can prove by a preponderance of the evidence "an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time." *LaCroix¸* 137 So.2d at 206.

In this case, CCB claims that the Debtor abandoned his homestead, the Langston Property, when he began renting out the property. CCB also contends that he failed to re-establish his homestead in the Langston Property when he moved back in sometimes in 2007 by failing to use the legislative mechanisms as provided for by Fla. Stat. §222.01. Therefore, CCB argues, the proceeds from the sale of the Langston Property in April 2009 cannot be claimed as exempt. This argument fails on both the evidence and the law.

There is no evidence before the Court that contradicts the Debtor's testimony that he resided in the Langston Property for a year to a year and a half before selling it in April 2009. Thus, under Florida law, the Debtor re-established his homestead in the Langston Property by residing there prior to the April 2009 sale. *See Turner*, 130 So. at 624; *see also Osborne v. Dumoulin*, 55 So. 3d 577, 583 (Fla. 2011) (stating that the "failure to employ these statutory methods for asserting a homestead exemption claim, however, does not waive the right to the homestead exemption"). CCB has failed to rebut the presumption that Mr. Fling re-established his homestead at the Langston Property, and therefore, CCB has failed to meet its evidentiary burden in objecting to his claim of the homestead exemption.

As for the proceeds of the sale of the Langston Property, those are protected under the homestead exemption as homestead proceeds. The evidence before the Court shows that Mr. Fling

4

attempted to reinvest the proceeds of the sale of the Langston Property in several homes over the course of the 12-13 months after the sale of his home. He employed a realtor shortly after the April 2009 sale and seriously looked at somewhere between 6-12 homes. He also made several offers on homes, one of which was accepted but fell through. There is no evidence before the Court that demonstrates that these offers were not an effort to reinvest homestead proceeds into a new homestead. Therefore, it appears that Mr. Fling had an "abiding good faith intention" to reinvest the proceeds from the sale of the Langston Property into another homestead up until the point where CCB froze the account that contained the homestead proceeds. *See LaCroix*, 137 So.2d at 206.

Since CCB has failed to meet its evidentiary burden in objecting to Mr. Fling's claim of exemption in the homestead proceeds account, its objection to Debtor's claim of homestead exemption should be denied. Accordingly, it is hereby

ORDERED and ADJUDGED that Creditor Capital City Bank's Objection to Debtor's Claim of Exemption (Doc. 113) is OVERRULED.

DONE and ORDERED in Tallahassee, Florida this 26th day of May, 2011.

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: all parties in interest